OPINION
{¶ 1} The State of Ohio appeals from an order of the trial court suppressing evidence obtained as the result of a search authorized by a search warrant. The State contends that the trial court erred by finding: (1) that the affidavit submitted to the magistrate who issued the warrant was insufficient to establish the existence of probable cause; and (2) that the officer who executed the warrant was not entitled to rely, in good faith, upon the warrant, pursuant to United States v. Leon (1984),468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, because a reasonable police officer would know that the affidavit was insufficient.
 {¶ 2} We conclude that although the issue is close, the affidavit submitted to the magistrate was insufficient to establish the existence of probable cause. Because that issue is very close, and because an experienced prosecutor approved the application for the search warrant, we conclude that the officer who executed the search warrant was entitled to rely, in good faith, upon the warrant. Therefore, we agree with the State that the trial court erred in ordering the evidence suppressed.
 {¶ 3} At the suppression hearing, defendants-appellants Lawrence and Irene Fry argued that fraud was used to procure the warrant. The trial court found it unnecessary to reach this factual issue, because the trial court concluded that, even in the absence of any evidence of fraud, the affidavit was sufficiently deficient, on its face, that the officer executing the warrant could not rely, in good faith, upon the authority of the warrant. Because the factual issue of fraud was never decided by the trial court, the suppression order is Reversed, and this cause is Remanded to the trial court for further proceedings, which should include a resolution of the Frys' fraud claim.
 I {¶ 4} Springfield City Prosecutor Michael Sheils applied to Clark County Common Pleas Judge Douglas Rastatter for a warrant to search the residential dwelling and companion animal kennel located at 3625 Mumper Road, in Springfield, for evidence of violations of R.C. 959.131(C)(2). Sheils relied upon an affidavit of Edward Sisler, the Executive Director of the Clark County Humane Society.
 {¶ 5} Judge Rastatter issued the warrant. Police officers executed the warrant, and obtained evidence. Lawrence and Irene Fry were charged with nine counts of cruelty to a companion animal, in violation of R.C. 959.131.
 {¶ 6} The Frys moved to suppress the evidence obtained as a result of the search, claiming that the search and seizure was unlawful. The trial court determined that the affidavit submitted to the issuing magistrate was insufficient to establish probable cause, and held a hearing on the issue of whether the police officers executing the warrant were, nevertheless, entitled to rely in good faith upon the warrant, pursuant to United Statesv. Leon, supra. At that hearing, at which Springfield Prosecutor Sheils testified (the State was represented by independent counsel), the Frys attempted to make an argument that fraud was used to procure the warrant. The State argued, and the trial court agreed, that the trial court must first determine whether the police officers who executed the warrant were entitled, in good faith, to rely upon it, and then, only if the trial court should answer that question in the affirmative, reach the issue of fraud, on which the Frys would have the burden of proof.
 {¶ 7} The trial court determined that the affidavit was sufficiently deficient on its face that the police officers executing the warrant were not entitled, in good faith, to rely upon the authority conferred by the warrant. Accordingly, the trial court ordered the evidence suppressed, without reaching the Frys' fraud claims.
 {¶ 8} From the trial court's suppression order, the State appeals.
 II {¶ 9} The State's First Assignment of Error is as follows:
 {¶ 10} "THE TRIAL COURT ERRED IN DETERMINING THAT A SEARCH WARRANT WAS INVALID WHERE THE ISSUING MAGISTRATE HAD A SUBSTANTIAL BASIS FOR CONCLUDING THAT PROBABLE CAUSE EXISTED."
 {¶ 11} The application for the search warrant was based upon the claim that there was probable cause to believe that companion animals were being kept at 3625 Mumper Road in violation of R.C.959.131(C)(2), and that, by implication, probative evidence thereof could be found at that location. R.C. 959.131(C) provides as follows:
 {¶ 12} "No person who confines or who is the custodian or caretaker of a companion animal shall negligently do any of the following:
 {¶ 13} "(1) Torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal;
 {¶ 14} "(2) Deprive the companion animal of necessary sustenance, confine the companion animal without supplying it during the confinement with sufficient quantities of good, wholesome food and water, or impound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight, if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation, confinement, or impoundment or confinement in any of those specified manners."
 {¶ 15} The first paragraph of the search warrant affidavit alleges a violation of R.C. 959.131(C)(2). During the oral argument of this appeal, the State argued that because the last paragraph of the search warrant affidavit alleges a violation of R.C. 959.131(C), without specifying a subdivision thereof, it is broad enough to encompass an allegation of a violation of R.C.959.131(C)(1). Assuming, for purposes of analysis, that this is a valid argument, we conclude that no violation of R.C.959.131(C)(1) is implicated.
 {¶ 16} The State argues that R.C. 959.131(C)(1) proscribes the commission of an "act of cruelty," and, since "cruelty" is assigned, by R.C. 959.131(A)(2) as having the same meaning set forth in R.C. 1717.01, it includes omissions and neglects, as well as acts:
 {¶ 17} "`Cruelty,' `torment,' and `torture' include every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief;" R.C. 1717.01(B).
 {¶ 18} But R.C. 959.131(C)(1) does not proscribe cruelty to companion animals, generally, but only an "act" of cruelty. In construing this criminal statute strictly against the State, we conclude that it does not include omissions or neglects of cruelty, but only acts of cruelty within its proscriptions.
 {¶ 19} We note, because we deem it significant, that the final clause of R.C. 959.131(C)(2) — "if it can be reasonably expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation,confinement, or impoundment or confinement in any of thosespecified manners" (emphasis added) — appears to be a limitation upon the preceding part of the statute, rather than an enlargement of the statute to encompass acts of cruelty or neglect not identified in the preceding part of the statute.
 {¶ 20} To support its application, the State submitted the affidavit of Edward Sisler, the Executive Director of the Clark County Humane Society. That affidavit averred as follows:
 {¶ 21} "On July 26, 2005, a Melissa Nicole Casey contacted the Clark County Humane Society to report the terrible physical condition of a `Schnoodle' puppy she had purchased for Three Hundred Fifty dollars ($350.00) from Irene Fry on July 24, 2005. Irene Fry advertised the sale of `Schnoodle' puppies for sale in a Columbus, Ohio newspaper.
 {¶ 22} "Ms. Casey reported that she contacted Irene Fry by telephone. Irene Fry stated that she had 2 `Schnoodle' puppies for sale, one black in color and one apricot in color. Ms. Casey made arrangements to look at the puppies at 3625 Mumper Road in Springfield, OH. Upon arrival, Ms. Casey observed a residential structure, a brown garage-like structure and a red, 2-story building. Ms. Casey heard dogs barking in the area of the red 2-story building and observed numerous cats behind a fence between the house and the red 2-story building. Ms. Casey viewed the apricot puppy inside the residence. Ms. Casey asked to see the black puppy and Irene Fry was very reluctant to allow Ms. Casey to see where the puppies were kept. Ms. Fry shut Ms. Casey, Ms. Casey's mother, Rhonda Casey, and her father, Mike Casey, in a back room, went outside, and returned with the black puppy. The black puppy was filthy and had a terrible odor. Ms. Casey heard other dogs barking inside the Fry residence.
 {¶ 23} "Ms. Casey decided she did not want the black puppy due to its condition and purchased the apricot puppy. Irene Fry stated that the puppy was up-to-date with its shots but did not provide any papers in support.
 {¶ 24} "Upon enroute home [sic] to Columbus, the puppy began to appear sick. Ms. Casey took the puppy to the Morse Road Veterinary Clinic in Columbus. The puppy was vomiting, depressed, lethargic, had generalized purities (itching), had fleas and is suspected of having sarcoptic mange. Ms. Casey has provided a copy of the veterinary report prepared by Michael A. Verhage, DVM, of the Morse Road Veterinary Clinic.
 {¶ 25} "It is my belief that Melissa Nicole Casey is a reliable person and I have no reason to question the accuracy of the information she provided to me concerning the condition of the puppies located at 3625 MUMPER RD. As Executive Director of the Clark County Humane Society, and based on my prior experience and contact with Irene Fry, it is my belief that there is a substantial likelihood that said dogs and cats suffer from the following medical problem; [semi-colon in original] malnutrition, flea infestation, mange, and other unidentified medical conditions. Additionally, there is probable cause to believe that the companion animals are being denied necessary medical treatment and necessary sustenance.
 {¶ 26} "In May, 1997, Irene Fry was charged with, and convicted of cruelty to animals. The ailments suffered by the numerous dogs and cats that supported the 1997 conviction included sarcoptic mange, demedeptic mange, periodontal disease, primary and secondary infections, internal parasites, open sores, parvo, and flea infestation. Additionally, evidence existed that the animals were not provided necessary sustenance, medical treatment, or ventilation.
 {¶ 27} "Based upon the foregoing, I, Edward Sisler, Executive Director, Clark County Humane Society, believe that the companion animals (dogs and cats) being kept at 3625 MUMPER RD., Springfield, Clark County, Ohio are being denied necessary medical treatment and necessary sustenance in violation of ORC § 959.131(C)."
 {¶ 28} In its decision granting the motion to suppress, the trial court opined:
 {¶ 29} "The affidavit is based entirely on hearsay provided by a person [presumably Melissa Casey] whose credibility and reliability are unknown. There is nothing in the affidavit that provides a basis for the Judge to conclude that the informant was a credible person."
 {¶ 30} We disagree with this analysis. The Ohio Supreme Court has cited with approval the categorization of classes of informants used by federal courts:
 {¶ 31} "To assess the existence of these factors [in determining the value of an informant's report], it is useful to categorize informants based upon their typical characteristics. Although the distinctions between these categories are somewhat blurred, courts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant. While the United States Supreme Court discourages conclusory analysis based solely upon these categories, insisting instead upon a totality of the circumstances review, it has acknowledged their relevance to an informant's reliability. The court has observed, for example, that an anonymous informant is comparatively unreliable and his tip, therefore, will generally require independent police corroboration. Alabama v. White, 496 U.S. at 329, 110 S.Ct. At 2415, 110 L.Ed.2d at 308. The court has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: `[I]f an unquestionably honest citizen comes forward with a report of criminal activity — which if fabricated would subject him to criminal liability — we have found rigorous scrutiny of the basis of his knowledge unnecessary.' Illinois v. Gates, 462 U.S. at 233-234, 103 S.Ct. At 2329-2330, 76 L.Ed.2d at 545.
 {¶ 32} "In light of these principles, federal courts have routinely credited the identified citizen informant with greater reliability. In United States v. Pasquarille (C.A.6, 1994),20 F.3d 682, 689, for instance, the Sixth Circuit presumed the report of a citizen informant to be reliable because it was based on firsthand observations as opposed to `idle rumor or irresponsible conjecture,' [citation omitted]. Likewise, the Tenth Circuit has held that the statement of an ordinary citizen witness is entitled to more credence than that of a known informant. `Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen * * * in the position of a crime * * * witness.' [Citation omitted.]" Maumee v. Weisner
(1999), 87 Ohio St.3d 295, 300.
 {¶ 33} In Maumee v. Weisner, supra, the Ohio Supreme Court went on to quote, with approval, the reasoning in State v. Loop
(March 14, 1994), Scioto App. No. 93CA2153, 1994 WL 88041, that "Information from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable." See, also, State v.Carstensen (December 18, 1991), Miami App. No. 91-CA-13, 1991 WL 270665, which is also cited approvingly in Maumee v. Weisner,
supra.
 {¶ 34} To be sure, in the case before us, the citizen informant, Melissa Casey, did not directly observe criminal conduct, but those things that she did directly observe ought to be entitled to the same presumption of reliability that attends a report of any presumptively honest citizen making a report to authorities, at least in the absence of any indications of unreliability.
 {¶ 35} We conclude that the trial court erred when it discounted the information in the affidavit that Sisler, the affiant, obtained from Casey, an identitied citizen informant.
 {¶ 36} The question remains whether that information rises to the level of probable cause to believe that a violation of R.C.959.131(C)(2) occurred. Because Casey did not observe any animal in the conditions under which it was confined, her information cannot constitute direct evidence that the conditions of confinement violated the statute. So the issue is whether reasonable inferences arising from Casey's observations support a finding of probable cause.
 {¶ 37} Probable cause does not, of course, require proof beyond reasonable doubt, or even by a preponderance, but it does require more than a mere suspicion. Probable cause requires evidence that establishes a fair probability, or likelihood, of criminal activity. State v. George (1989), 45 Ohio St.3d 325.
 {¶ 38} The issue of whether the affidavit in this case is sufficient, on its face, to establish the existence of probable cause is, in our view, exceedingly close. We conclude that it falls slightly short of that mark. Casey only observed two puppies. One, the black puppy that she did not purchase, "was filthy and had a terrible odor." Immature animals can become filthy, which naturally leads to terrible odors, for any number of reasons that do not amount to being deprived of necessary sustenance or sufficient quantities of good, wholesome food and water, or of adequate shelter, in violation of the statute.
 {¶ 39} The other puppy, the apricot puppy that she purchased, became seriously ill on the way from Springfield, the point of purchase, to Columbus, Casey's home. Again, puppies can often become ill, even seriously ill, for reasons having nothing to do with lack of adequate sustenance or shelter. The fact that the puppy Casey purchased from Irene Fry became ill so soon after she purchased it might give rise to a reasonable suspicion that the puppy was not being adequately cared for, but we conclude that it does not establish a fair probability that the animal had been confined without adequate sustenance or shelter. There are just too many other ways in which an immature animal, in close proximity to other animals, can become ill.
 {¶ 40} Finally, we cannot ignore the fact that Irene Fry had been convicted eight years earlier, in 1997, of cruelty to animals. This, the one material fact in Sisler's affidavit of which he appears to have had direct knowledge, is significant. Nevertheless, although the issue is close, we conclude that that fact, together with Casey's observation of the two puppies, and throwing in, also, Fry's observed reluctance to allow Casey and her parents access to the area where the puppies were kept (which could have been for any number of innocent, business-related reasons, including, for example, reducing the exposure of the other animals to any parasites or diseases the Caseys might be carrying), is not sufficient to establish a fair probability that companion animals were, in violation of R.C. 959.131(C)(2):
 {¶ 41} deprived of necessary sustenance;
 {¶ 42} confined without being supplied with sufficient quantities of good, wholesome food and water; or
 {¶ 43} confined without affording the animals access to shelter from heat, cold, wind, rain, snow or excessive direct sunlight.
 {¶ 44} The trial court correctly concluded that the affidavit was insufficient to establish probable cause for the issuance of the search warrant. The State's First Assignment of Error is overruled.
 III {¶ 45} The State's Second Assignment of Error is as follows:
 {¶ 46} "THE TRIAL COURT ERRED IN SUPPRESSING EVIDENCE OBTAINED BY OFFICERS WHO WERE ACTING IN OBJECTIVELY REASONABLE RELIANCE OF A SEARCH WARRANT ISSUED BY A DETACHED AND NEUTRAL MAGISTRATE."
 {¶ 47} In State v. Klosterman (1996), 114 Ohio App.3d 327,334, a case cited and relied upon by the trial court, we held that: "Information supporting probable cause that is known to the affiant, but not included in the affidavit or revealed to the Magistrate prior to the issuance of the warrant is not pertinent to the determination of whether an objectively reasonable officer should have known that the warrant was not based on probable cause." As one, narrow exception to this rule, we did allow that the fact that the assistance and advice of a prosecuting attorney was involved in the procuring of the search warrant is a factor that would militate in favor of allowing good-faith reliance. The trial court permitted evidence on this fact, and it was established, beyond dispute, that Michael Sheils, the Springfield City Prosecutor for the last twenty years, who testified at the suppression hearing, approved of the search warrant application and affidavit.
 {¶ 48} In applying the good-faith exception to the probable cause requirement, the issue is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. State v. Klosterman, supra, citingUnited States v. Leon (1984), 468 U.S. 897, at 922,104 S.Ct. at 3420, 82 L.Ed.2d, at 698, fn. 23.
 {¶ 49} Absent a change in Fourth Amendment jurisprudence that a reasonably well trained police officer could not be expected to have anticipated, this issue would ordinarily seem to turn on the closeness of the probable cause determination. If the facts presented in the affidavit fall well short of the facts necessary to establish probable cause, then a reasonably well trained police officer could be expected to know that the search is unlawful, even though a magistrate has issued a warrant. Conversely, if the facts present a close question that experienced judges find troublesome, a reasonably well trained police officer could not be expected to know that the search for which he has obtained a warrant is nevertheless unlawful.
 {¶ 50} In the case before us, the closeness of the issue of probable cause, discussed in Part II, above, combined with the fact that a city prosecutor with twenty years' experience approved the application and affidavit, leads us to the conclusion that a reasonably well trained police officer could not be expected, merely from the face of the affidavit, to know that the search for which he obtained the warrant issued in this case was, nevertheless, unlawful. We conclude, therefore, that the trial court erred in finding that the State had failed to establish the application of the good-faith exception to the probable cause requirement.
 {¶ 51} The State's Second Assignment of Error is sustained.
 IV {¶ 52} The State's Second Assignment of Error having been sustained, the order of the trial court suppressing evidence is Reversed, and this cause is Remanded for further proceedings consistent with this opinion. Upon remand, the trial court may proceed to consider the Frys' claim that fraud was used to procure the search warrant, which the trial court found unnecessary to consider in view of its decision to suppress the evidence for reasons independent of that claim.
Brogan and Donovan, JJ., concur.