[Cite as *State v. Bridge*, 2015-Ohio-4518.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No. L-14-1204

       Appellee                                  Trial Court Nos.  CRB-14-10070-0102
                                                      CRB-14-10070-0202
v.

Teri K. Bridge                                          **DECISION AND JUDGMENT**

       Appellant                                 Decided:  October 30, 2015

* * * * *

David Toska, City of Toledo Chief Prosecutor, and
Henry Schaefer, Assistant Prosecutor, for appellee.

Brad F. Hubbell, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an accelerated appeal from a judgment of the Toledo Municipal

Court.  Defendant-appellant, Teri Bridge, was convicted of and sentenced on two counts

of cruelty to companion animals following a trial to the court.  She now challenges those

convictions through the following "issue presented for review":

Did the trial court err when it found Ms. Bridge guilty where the evidence was insufficient to support the finding and the finding was not sustained by the manifest weight of the evidence?

{¶ 2} The facts of this case, as testified to at the trial below, are as follows. On June 26, 2014, Officer Gene Boros, an animal cruelty and neglect investigator for the Toledo Area Humane Society ("TAHS"), received a report regarding a dog kennel in the backyard of a vacant residential property on Hargrave Street in Toledo, Ohio. The temperature that day was 90 degrees. Boros went to the property and observed a dog kennel, approximately 10 feet wide by 10 feet deep, that contained two live dogs and one deceased dog. There were flies and maggots throughout the kennel and a horrible smell. The dirt floor of the kennel was littered with feces, and although there were water bowls in the kennel, they were full of mud and algae. The only water present was a puddle of rain water. Boros testified that it had rained the night before. The only food present was kibble that appeared to have been thrown into the kennel onto the ground. It was mixed with dirt and feces. The kennel did not have an actual door with a latch, but was enclosed by metal gates that were attached to each other with metal clips and metal twining that had to be cut to access the kennel. It took Boros approximately 20 minutes to cut those attachments and enter the kennel. Boros removed the live dogs and assessed them. They were panting severely and were very hot. Once he got them water, they each drank an entire bowl, and Boros estimated that they had been without clean water for at least a day. He testified that they were severely matted and dirty and smelled of feces and of the

2.

deceased dog. He then assessed the deceased dog. Boros stated that the dog had decomposed to the point where its innards were, basically, liquid. He tried to remove the dog, but it could not be moved intact. Boros testified that based on the condition of the dog, he estimated that it had been deceased for at least four to seven days. Boros then posted a notice on the kennel asking the owner to call him as soon as possible. He transported the live dogs to TAHS, where they received veterinary care.

{¶ 3} Boros spoke to the owner of the property, appellant Teri Bridge, several days later. During that conversation, Bridge acknowledged that she did not attend to the dogs every day and stated that she did not have anyone to help her remove the deceased dog. Bridge testified in her own defense at the trial below. She stated that she had lived in a house on the Hargrave Street property for 15 years, when the house was destroyed by a gas explosion, approximately one year earlier. Smokey, the deceased dog, was approximately 12 years old when he died. The other two dogs were his issue and were born about a year after Smokey's birth. The dogs lived in the outdoor kennel their entire lives, including the previous winter when the temperature reached 20 degrees below zero. The kennel did contain a wooden lean-to structure under which the dogs could go for shelter. Bridge acknowledged that in June 2014, when the dogs were taken by TAHS, the temperatures had been in the 90 degree range for three weeks. She denied telling Boros that she did not attend to the dogs every day and testified that either she or her companion, Robert Adams, would go to the property every day to check on the dogs and give them food and water. To feed the dogs, Bridge stated that she would pour food

3.

down a pipe that ran down the side of the kennel into a trough. Bridge testified that she was in the process of building a garage on the property that would have air conditioning and heat, so the dogs "didn't have to suffer the last couple years of their life [sic]." She testified that on June 25, 2014, she learned from Adams, who had gone to check on the dogs, that Smokey had died. However, she was unable to remove him from the kennel and admitted that she left him there with the two live dogs.

{¶ 4} Robert Adams also testified at the trial below. He testified that in June 2014, either he or Bridge attended to the dogs every day. He explained the feed tube he built to feed the dogs and stated that he would pour water through the fence into a large black water bowl. The photographs of the kennel that Boros took on June 26, 2014, show a large black bowl, as well as others, up against the fence of the kennel. The bowl is mostly dry, with dry green algae on part of the bowl and wet green algae on the rest of bowl. Adams testified that he came to the property to check on the dogs on Wednesday, June 25, 2014, and found Smokey had died. He stated that because he could not handle the two live dogs and remove Smokey from the kennel by himself, he left the dogs as they were. He and Bridge had planned to return the next day to remove Smokey. He further stated that he had been to the property on June 24, and that Smokey was alive then but lethargic. Adams assumed the dog was sick but would recover.

{¶ 5} Finally, Sherry Karnowski, a life-long friend of appellant's, testified. She stated that she had been to the property in early June, had seen the dogs, and that the dogs had food and water in bowls. She described appellant's love of animals, but when shown

4.

the photographs of both live dogs and the dead one, she admitted that the dogs did not look as though they were cared for by someone who loved animals.

{¶ 6} At the conclusion of the trial, the court found appellant guilty of both counts of cruelty to animals. It imposed a 90-day suspended sentence on each count, ordered that those terms be consecutive, fined her $100 and court costs, and placed her on probation for one year.

{¶ 7} In her sole assignment of error, appellant asserts that her convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 8} The phrase "sufficiency of the evidence" raises a question of law as to whether the evidence submitted at trial is legally adequate to support a verdict as to all the elements of a crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Under this standard of adequacy, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment and on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), fn. 4. Under a manifest weight standard, the court must sit as the "thirteenth juror" analyzing the entire

record to deduce the relative weight of credible evidence. *Thompkins*, *supra,* at 387. However, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The conviction should be reversed, and a new trial ordered, only in those "'exceptional case[s] in which the evidence weighs heavily against the conviction.'" *Thompkins, supra,* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Thus, a conviction will only be overturned under the manifest weight standard when the trier of fact "'clearly lost its way and created * * * a manifest miscarriage of justice.'" *Id.,* quoting *Martin, supra,* at 175.

{¶ 9} Appellant was convicted of two counts of cruelty to companion animals in violation of R.C. 959.131(C)(2). That statute reads:

(C) No person who confines or who is the custodian or caretaker of a companion animal shall negligently do any of the following:

* * *

(2) Omit any act of care by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal[.]

{¶ 10} Appellant contends that because the state failed to present evidence that the two surviving dogs were in pain or suffered, the convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree. This statute criminalizes acts of omission as they relate to companion animals. *See State*

6.

*v. Sherman*, 6th Dist. Lucas No. L-14-1060, 2015-Ohio-3299. Pursuant to former R.C. 2901.22(D)[1]:

> [a] person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist.

{¶ 11} From the evidence presented at the trial below, a trier of fact could reasonably conclude that the dogs had not been attended to for several days. There was no clean water in the bowls. Boros estimated that the dogs had been without clean water for at least a day. From the photographs of the bowls submitted into evidence, one could reasonably conclude that they had not contained clean water for some time. Food was littered about the pen and mixed in with feces. The photographs entered into evidence showing the conditions of the kennel in which the dogs lived, are horrific. The temperature was around 90 degrees that day, and had been in that range for several weeks. The dogs were very hot, were panting severely and each drank an entire bowl of water when removed from the kennel.

{¶ 12} Based on the evidence submitted at the trial below, we cannot say that appellant's convictions were against the manifest weight of the evidence or unsupported

---

[1] R.C. 2901.22(D) was amended, effective March 23, 2015, to reflect gender neutral language. *See* 2014 SB 361.

7.

by sufficient evidence. In particular, we find that there was sufficient evidence (photographs of the conditions of the bowls) for the trier of fact to conclude that appellant, who confined her companion animals outdoors in excessive heat, negligently omitted an act of care, i.e., providing adequate food and water. In addition, Officer Boros' assessment of the dogs following their removal from the kennel supports a finding that the dogs experienced unnecessary or unjustifiable suffering, by being left in excessive heat without adequate water. The lower court did not lose its way or create a manifest miscarriage of justice in convicting appellant of the two charges of cruelty to companion animals and the sole assignment of error is not well-taken.

{¶ 13} On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

8.

Mark L. Pietrykowski, J.                    _____
                                                       JUDGE

Stephen A. Yarbrough, P.J.                  _____

James D. Jensen, J.                                                    JUDGE
CONCUR.

                                                     _____
                                                       JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.