JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Appellant Darryl Farmer appeals his conviction for theft by deception. He assigns the following two errors for our review:
 "I. The trial court erred when it entered a guilty verdict without sufficient evidence to sustain each and every element of the conviction."
 "II. The trial court erred when it entered a verdict that was inconsistent with the manifest weight of the evidence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Farmer's conviction. The apposite facts follow.
 {¶ 3} Farmer waived his right to a jury trial; therefore, the matter proceeded to the bench.
 Bench Trial {¶ 4} Michelle Hardnick, a Cleveland Police Department dispatcher for twenty years, purchased a house in 1996 located at 12320 Phillips Avenue in Cleveland, Ohio. The home served as her primary residence for eight years until June 2004. At that time, in an attempt to prevent the bank from foreclosing on her home, Hardnick moved into an apartment and rented her home to tenants. In January 2005, Hardnick had to evict the couple. Without the income from renting her property, Hardnick fell behind on her mortgage payments.
 {¶ 5} Hardnick hired a real estate agent to attempt to sell the property before the home was foreclosed upon. The real estate agent was having a difficult time finding a buyer. Hardnick met Darryl Farmer in a chance meeting. Farmer and *Page 3 
Hardnick had been friends since childhood. Hardnick told Farmer about her foreclosure dilemma; Farmer offered to help her sell the home to avoid foreclosure. Hardnick accepted his offer and terminated her relationship with her former realtor.
 {¶ 6} At Farmer's suggestion, Hardnick executed a power of attorney on August 30, 2005, which gave Farmer the power to handle the sale of the house. During the first week of September 2005, Farmer informed Hardnick that he would deal with the bank and try to find someone to rent the property with a lease option to buy it. Hardnick agreed with the idea as her primary focus was to prevent foreclosure from ruining her credit.
 {¶ 7} During the second or third week of September 2005, one of Hardnick's former neighbors called her to tell her people were moving into Hardnick's home. The neighbor took her cell phone over to the people so that Hardnick could speak with them. The people, who were later identified as the Bushes, told Hardnick that they were renting the property from "Phillip Wade." Hardnick informed them she was the owner and that a man named Darryl Farmer was attempting to sell the property for her. The Bushes did not recognize Farmer's name. Hardnick traveled to the property to discuss the matter with them and discovered that "Phillip Wade" was the name Darryl Farmer used as an alias.
 {¶ 8} The Bushes, Hardnick, and Farmer met to discuss the lease to buy option arrangements. According to the Bushes and Hardnick, it was agreed that *Page 4 
Farmer would set up an escrow account. The $800 per month rent was to be paid into the escrow account to be used as a down payment on the house if the Bushes should qualify for a loan. If not, Hardnick agreed to give the total amount back to the Bushes. Hardnick testified she was not looking to make any money off the house, she just wanted ownership transferred to prevent foreclosure on the home from ruining her credit. Farmer was to receive any profit made on the sale of the home.
 {¶ 9} In May or June of 2005, Hardnick called Farmer to inquire why it was taking so long to transfer the property. She stated that Farmer became very belligerent and refused to answer anymore of her telephone calls. After speaking with the Bushes, she discovered they were not able to qualify for a loan. When she received notice that the house was to be sold at a sheriff's sale, she wrote a letter demanding Farmer return the $4,600 in deposits paid by the Bushes. Farmer never returned the money. The home was sold at a sheriff's sale on April 13, 2006.
 {¶ 10} The evidence also indicated that prior to the Bushes moving in, Farmer called Hardnick to inform her he was replacing some of the piping which was taken by vandals so that it was more appealing to a purchaser. Hardnick offered to repay Farmer for the work, but Farmer refused to be paid. It was later revealed that Farmer did not actually make the improvements to the home. Rather, the Bushes replumbed the basement in addition to cleaning out the debris, redoing the wood floors, and replacing the furnace. Farmer never gave the Bushes money for their repairs. *Page 5 
 {¶ 11} The trial court found Farmer guilty of theft by deception. The court sentenced Farmer to twelve months in prison and ordered the payment of restitution to the Bushes in the amount of $4,600. Six months later, the court found Farmer qualified for judicial release and placed him on community control for four years under the supervision of the probation department.
 Insufficient Evidence {¶ 12} In his first assigned error, Farmer contends the evidence was insufficient to support his theft by deception conviction. We disagree.
 {¶ 13} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman:[1]
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[2]
 {¶ 14} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[3] in which the Ohio Supreme Court held: *Page 6 
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 15} R.C. 2913.02 defines "theft by deception" as follows:
 "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 * * * *
 "(3) By deception."
 {¶ 16} Therefore, to prove theft by deception there has to be either fraudulent conduct or a false pretense where an owner is deprived of a service or property.[4]
 {¶ 17} Farmer contends the state failed to prove he deceptively deprived Hardnick of the money because she executed a power of attorney allowing him to *Page 7 
collect the money and she was aware he was collecting the $800 per month. In addition, he contends that Hardnick admitted to not having any interest in the money.
 {¶ 18} Deception is defined by R.C. 213.01(A) as:
 "(A) `Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other object or subjective fact."
 {¶ 19} The evidence showed that Hardnick accepted Farmer's offer to attempt to sell her home. She appointed Farmer as her power of attorney so that he could act as her agent in selling the home. While it is true that Hardnick was aware Farmer was receiving payments of $800 per month from the Bushes, he was collecting this money on her behalf to place in an escrow account to be used to assist the Bushes in purchasing the home. Providing the Bushes with a down payment would benefit Hardnick because she desired to sell the home to avoid foreclosure. Farmer had no right or interest in the money as he was only to receive payment for his services based on the proceeds obtained, if any, from the sale of the home.
 {¶ 20} When Hardnick demanded Farmer return the money, he refused to do so. By failing to return the money, it is clear that Farmer had the intent to keep it, even though he had no permission to do so. In fact, there is no evidence that Hardnick's agreement to use Farmer's services involved paying him with the money *Page 8 
collected from the Bushes. Accordingly, there was sufficient evidence to support Farmer's conviction. Farmer's first assigned error is overruled.
 Manifest Weight of the Evidence {¶ 21} In his second assigned error, Farmer contends his conviction was against the manifest weight of the evidence. Farmer argues his actions did not amount to a criminal act, but that Hardnick used her position as a Cleveland police dispatcher to bring a criminal action for what constitutes a civil action. We disagree.
 {¶ 22} In a manifest weight analysis, an appellate court "reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and * * * resolves conflicts in the evidence."[5] "A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial."[6]
 {¶ 23} In State v. Wilson,[7] the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins
(1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In Thompkins, the court distinguished *Page 9 between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."
 {¶ 24} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest *Page 10 
miscarriage of justice that the conviction must be reversed and a new trial ordered."[8] Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."[9]
 {¶ 25} Regardless of the fact that Hardnick was a Cleveland Police dispatcher, Farmer could not be successfully prosecuted unless his actions actually constituted a criminal act. Farmer concedes the facts are not in dispute. As we concluded in the first assigned error, Farmer's actions constituted theft by deception pursuant to R.C.2929.13(A)(3).
 {¶ 26} By signing the power of attorney, Hardnick was designating Farmer to act as her agent. It was agreed he would deposit the money collected into an escrow account to further the Bushes' ability to qualify for a loan to purchase the home, which would ultimately benefit Hardnick. Hardnick stated that if they did not qualify, she wished for the Bushes' money be returned, as their living in the home while she attempted to sell it kept vandals away. Farmer failed to abide by these terms by failing to set up the escrow account in the first place, and secondly, by pocketing the money. According to Hardnick, the money was hers to do with as she pleased as Farmer agreed he would only be paid for his services out of the proceeds from the sale of the house. Therefore, he wrongfully kept money that was not his to keep. *Page 11 
Accordingly, the trial court did not lose its way and create a manifest miscarriage of justice by concluding Farmer was guilty of theft by deception. Farmer's second assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, JUDGE
JAMES J. SWEENEY, P.J., and MARY EILEEN KILBANE, J., CONCUR
[1] (1978), 55 Ohio St.2d 261, syllabus.
[2] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[3] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[4] State v. Jacobozzi (1983), 6 Ohio St.3d 59.
[5] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
[6] Id. at 390 (Cook, J., concurring).
[7] 113 Ohio St.3d 382, 2007-Ohio-2202.
[8] State v. Thompkins, supra at 387.
[9] Id. *Page 1