THE STATE OF OHIO, APPELLEE, *v.* JACOBOZZI, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* KOURY ET AL., APPELLANTS.
THE STATE OF OHIO, APPELLEE, *v.* PRUDOFF, APPELLANT.

[Cite as State *v.* Jacobozzi (1983), 6 Ohio St. 3d 59.]

(Nos. 82-627, 82-643 and 82-644—Decided July 27, 1983.)

60 .

*Mr. Gregory A. White,* prosecuting attorney, *Mr. Douglas D. MacGillivray* and *Mr. William F. McKee,* for appellee.

*Mr. Malcolm C. Douglas,* for appellant Jacobozzi.

*Messerman & Messerman Co., L.P.A.,* and *Mr. Gerald A. Messerman,* for appellants Koury.

*Gold, Rotatori, Schwartz & Gibbons Co., L.P.A.,* and *Mr. Niki Z. Schwartz,* for appellant Prudoff.

*Per Curiam.* All the appellants herein have raised in this court, as well as in the courts below, the issue of whether the evidence produced at their joint trial was legally sufficient to support their convictions. The syllabus in *State v. Sorgee* (1978), 54 Ohio St. 2d 464 [8 O.O.3d 452], states:

"An appellate court will reverse a conviction based solely on circumstantial evidence where that evidence does not, as a matter of law, preclude all reasonable theories of innocence."

See, also, *State v. Kulig* (1974), 37 Ohio St. 2d 157 [66 O.O.2d 351] and *State v. Goodin* (1978), 56 Ohio St. 2d 438 [10 O.O.3d 533].

Moreover, in *Sorgee, supra,* we recognized that, "[a]lthough it is not the function of this court to consider the weight of the evidence when reviewing the trial court's record in a criminal case, the record may be examined to determine whether it includes sufficient evidence which, if believed, would convince the average juror of the accused's guilt beyond a reasonable doubt." *Id.* at 464; *Kulig, supra,* at 159.

The question thus presented is whether, in light of the state's exclusive use of circumstantial evidence, that evidence precludes any reasonable theory of innocence.

I

The basis for the state's case against appellant Jacobozzi is that, since his spouse held a one-half interest in the W. 13th St. property at the time he was chairman of the city agency which awarded the rehabilitation grant, a violation of R.C. 2921.42 occurred.[3] This court finds that the state failed to meet its burden of precluding all reasonable theories of innocence and, as a consequence, appellant Jacobozzi's conviction for having an unlawful interest in a public contract is fatally defective.

The quitclaim deed transferring ownership of the W. 13th St. property from Elio and Rae Jacobozzi to Maxine Koury named as grantor, "Elio Jacobozzi, married." A subsequent title examination revealed that the deed

---

[3] R.C. 2921.42 states in part:

"(A) No public official shall knowingly do any of the following:

"(1) Authorize, or employ the authority or influence of his office to secure authorization of any public contract in which he, a member of his family, or any of his business associates has an interest."

only operated to transfer Rae Jacobozzi's dower interest and not her ownership interest although her signature appeared at the proper place on the deed. Soon after this was brought to Rae Jacobozzi's attention, she transferred by quitclaim deed her one-half interest to Maxine Koury without any additional consideration.

The state evidently contends that the foregoing constitutes sufficient credible evidence to establish beyond a reasonable doubt that Rae Jacobozzi's interest in the W. 13th St. property was retained with a criminal intent. We disagree and hold that the state failed to sustain its burden of excluding the reasonable possibility that Rae Jacobozzi's interest was innocently retained through an inartfully drafted deed or a mere scrivener's error. The following facts compel our decision: Rae Jacobozzi signed her name together with her husband's name in the same place and manner as would one who was a grantor of the property; she promptly quitclaimed her one-half interest to Maxine Koury without any further consideration upon being notified that she still retained an interest in the W. 13th St. property; she transferred her interest approximately three years prior to her husband's indictment; and, unlike Prudoff and Maxine and Michael Koury, Rae Jacobozzi was not criminally implicated as an aider and abettor to her husband's alleged violation of R.C. 2921.42.

Without question there are multiple inferences which could be drawn from the state's circumstantial evidence that Jacobozzi was cognizant of his wife's interest. However, given an equally plausible theory of innocence, any doubt must be resolved in favor of the accused. *Sorgee, supra; Kulig, supra.* We therefore vacate Jacobozzi's conviction under R.C. 2921.42 due to legally insufficient evidence, since the record supports a reasonable theory of innocence, and order appellant discharged.

Consequently, we are constrained to vacate the remaining appellants' convictions under R.C. 2921.42. As previously stated, the state's case against the remaining appellants was that they aided and abetted Jacobozzi, the principal offender. While a principal offender need not necessarily be convicted in order to sustain another's conviction as an aider and abettor, there still must be sufficient evidence that an offense occurred. R.C. 2923.03 (C); *State* v. *Graven* (1977), 52 Ohio St. 2d 112 [6 O.O.3d 334], at pages 115-116; *State* v. *Perryman* (1976), 49 Ohio St. 2d 14 [3 O.O.3d 8], paragraph four of the syllabus.

Having concluded that the state failed to prove Jacobozzi's guilt beyond a reasonable doubt, as a principal offender, we likewise conclude that the state failed to sustain its burden of proof vis-a-vis appellants Prudoff, Michael Koury, and Maxine Koury as aiders and abettors. There can be no lawful conviction as an aider and abettor when the state fails to establish a principal offense. Accordingly, the convictions of Prudoff, Michael Koury, and Maxine Koury under R.C. 2921.42, being based upon legally insufficient evidence, are vacated, and appellants are discharged.

## II

Appellants Michael and Maxine Koury present the same question in regard to their respective convictions for grand theft. R.C. 2913.02 stated as follows:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

"* * *

"(3) By deception."

The basis of the Kourys' convictions under this statute is that the Kourys allegedly represented the relocation of Mrs. Ellis to their W. 13th St. property as being a rental arrangement as opposed to a purchase, thus deceiving the federal government into granting Mrs. Ellis an additional $2,000. Upon examination of the record, we can find no evidence whatsoever of a representation by either Michael or Maxine Koury to a governmental agency which could even arguably constitute a deception under the theft statute. The only evidence in the "Ellis file" is a receipt for rent signed by Michael Koury for a payment received from Mrs. Ellis. This receipt does not tend to prove deception on the part of Michael and Maxine Koury in any fashion. Moreover, the application for relocation assistance was completed by a city caseworker and involved absolutely no representation by the landowner, Maxine Koury.[4] This relocation plan involved no interaction between either the landowner, Maxine Koury, or Michael Koury and the governmental entity allegedly deceived. R.C. 2913.02 (A)(3) necessarily requires some fraudulent conduct or false pretense by which the owner is deprived of property or services. Here, the state's case is wholly devoid of any such proof. Accordingly, the convictions of Maxine and Michael Koury, under R.C. 2913.02, being based upon legally insufficient evidence, are vacated, and appellants are discharged.

For the foregoing reasons, the judgment of the court of appeals with respect to the convictions appealed from is reversed.[5]

*Judgment reversed.*

---

[4] Joseph R. Fetsko, Jr., a realty specialist from the United States Department of Housing and Urban Development, testified as a state's witness but stated on cross-examination the following:

"Q. * * * Is there any representation made on that application [for a relocation grant] by the owner?

"A. Not on the application, no, sir."

Parenthetically, this relocation plan seems to be an attempt by city officials to increase the eligibility for those individuals who are forced to be relocated due to urban renewal within the scope of an extremely complex federal regulatory scheme.

[5] Appellants also raise an issue regarding the conduct of the prosecutor before the grand jury. While we need not reach that issue in light of our disposition of this case, we are compelled to address, as an aside, the prosecutor's conduct.

The record reveals, largely through a proffer made by appellants' trial counsel, that, in presenting these cases to the grand jury, the prosecutor: used offensive language throughout the

CELEBREZZE, C.J., SWEENEY, LOCHER and C. BROWN, JJ., concur.

KEEFE, J., concurs as to case Nos. 82-643 and 82-644, but dissents as to No. 82-627.

J. P. CELEBREZZE, J., concurs as to case Nos. 82-627 and 82-644, but dissents as to No. 82-643.

HOLMES, J., dissents.

KEEFE, J., of the First Appellate District, sitting for W. BROWN, J.

HOLMES, J., dissenting. I dissent from the reversal in all cases in that it is my belief that the court of appeals perused the records of the trial court proceedings in great detail and reversed and dismissed some of the convictions, and affirmed a minimum of others. This precise review of the court of appeals with conclusions as to the sufficiency of the weight of the evidence for such remaining convictions should not be reweighed by this court in order to produce contrary conclusions.

J. P. CELEBREZZE, J., concurs in the foregoing dissenting opinion as to case No. 82-643 only.

---

grand jury proceedings, commented upon the secret deliberations of the grand jury, expressed his belief that the grand jury would return an indictment, permitted unauthorized persons into the grand jury room, misrepresented earlier grand jury testimony, and presented irrelevant material regarding the drinking habits of one of the grand jury witnesses. Furthermore, the prosecutor's conduct seemingly affected the attitudes of the grand jurors. A grand juror was to have commented that this case reminded him of the "Nixon" case and was heard to say, "Everybody went to jail but the head nigger. That is all I have to say." The court of appeals below conceded that certain grand jury testimony, "reveals several instances where the prosecutor may have overstepped the bounds of propriety." We agree.

If the prosecutor's conduct in the case at bar did not amount to a violation of due process, it was, at the least, conduct unbecoming to a prosecutor as a public official. We expect prosecutors to comport themselves in a manner commensurate with the solemnity and solicitude required when appearing before a grand jury.