THE STATE OF OHIO, APPELLEE, *v.* MCNEELEY, APPELLANT.

(No. 53807 — Decided
May 5, 1988.)

*John T. Corrigan,* prosecuting attorney, and *George Rukovena,* for appellee.

*William T. Doyle* and *Patrick F. Roche,* for appellant.

ANN MCMANAMON, J.   Michael McNeeley timely appeals his convictions for tampering with evidence (R.C. 2921.12) and tampering with records (R.C. 2913.42). McNeeley raises three assignments of error[1] to challenge the weight of the evidence supporting each conviction and to assert that the crimes are allied offenses of similar import. We find the latter argument well-taken.

The record discloses that then-Cleveland police officer Michael McNeeley and his partner Terrence Milligan were co-indicted for ag-

gravated robbery, theft in office, tampering with evidence and tampering with records. The charges against both officers stem from the robbery of Dempsey Willingham and the investigation which followed. The trial court granted McNeeley's motion for separate trials and a bench trial ensued. The trial court found McNeeley not guilty of the robbery and theft charges but returned a guilty verdict on the remaining counts.

Dempsey Willingham testified that at approximately 3:40 a.m. on August 18, 1986, Cleveland police officers McNeeley and Milligan stopped him on East 71st Street and Cedar Road as he drove his mother's auto home after purchasing hay fever medication at a downtown pharmacy. Willingham admitted the auto had a defective muffler. He told the court Milligan approached the driver's side of his vehicle and requested his driver's license while McNeeley appeared at the passenger side of his auto. When Willingham explained he had no driver's license, Milligan walked him to the back of the police car. Willingham told Milligan he was a sailor home on leave from the Navy. Willingham averred Milligan took his wallet during a pat down. Upon hearing the velcro closure of his wallet ripped open, Willingham turned and saw Milligan with the wallet. Willingham told the court McNeeley was standing off to the side approximately an "arm's length" away during the robbery.

Willingham testified McNeeley

---

[1] Appellant's assignments of error are:

I

"It was against the manifest weight of the evidence to find the appellant guilty of tampering with evidence, ORC 2921.12."

II

"The conviction below for tampering

with records, ORC 2913.42, is against the manifest weight of the evidence."

III

"The trial court erred in convicting the appellant of tampering with records, ORC 2913.42 and tampering with evidence, ORC 2921.12, in that they are allied offenses of similar import."

wanted to arrest him but that Milligan told him to "just get out of here." As Willingham walked back to his auto he discovered $200 missing from his wallet. Willingham returned to the police car and demanded his money. When McNeeley threatened Willingham with jail, he chose to return home. At approximately 5:00 that same morning, Willingham and his mother went to the Fifth District Police Station to file a complaint. Upon entering the station house, Willingham identified Milligan as the officer who stole his money. Willingham subsequently contacted a Coast Guard attorney about the robbery.

Sergeant David Hoke, the officer in charge of Cleveland's Fifth District Police Station, testified he was present when Willingham identified Milligan and provided Willingham with a complaint form. The sergeant told the court that between 5:15 a.m. and 5:30 a.m. he spoke with McNeeley and Milligan about the charges. The officers claimed Willingham was detained on a routine traffic stop and released with a warning. Milligan denied stealing the money; McNeeley did not contradict his partner.

Hoke explained to the court that all police officers must file duty reports at the completion of their shifts. These reports document officers' activities at ten-minute intervals. Hoke testified McNeeley and Milligan's August 17-18, 1986 duty report contained a 4:08 a.m. traffic stop on East 71st Street and Carnegie. It noted the license plate of Willingham's auto and that the "violator" was released with a "warning" at 4:19 a.m. The word "Dempsey" appeared on the report.

Hoke also testified the duty report claimed McNeeley and Milligan were at the city pool on East 63rd and Quimby from 4:45 a.m. until 5:10 a.m.; at the Wade Park apartments on 74th Street from 5:20 a.m. until 5:40 a.m.; and at

East 55th checking the Cleveland Metropolitan Housing Authority apartments from 5:50 a.m. until 6:00 a.m. Detective Sergeant Patrick Reynolds, a police handwriting expert, testified McNeeley signed both his name and Milligan's on the report.

Lt. Frederick Haffner, section supervisor of the Fifth District station, testified he spoke with McNeeley and Milligan several times in the early morning hours of August 18, 1986. Hafner told the court McNeeley denied any wrongdoing. Hafner also stated that when he searched the officers' patrol car he uncovered no money.

Cleveland Police Superintendent Victor Kovacic told the court that a week after the incident, McNeeley acknowledged that Milligan took Willingham's money. According to Kovacic, McNeeley stated he refused Milligan's offer to share the stolen cash.

Sergeant Richard Brindza of the Cleveland Police Complaint Investigation Unit testified he obtained McNeeley's and Milligan's August 17-18, 1986 duty report during his inquiry into Willingham's allegations. Brindza told the court the duty reports are kept to aid in the investigation of such complaints. After interviewing Willingham on August 20, 1986, Brindza spoke with McNeeley who denied any wrongdoing. Brindza stated that on August 26, 1986, he met with McNeeley in Superintendent Kovacic's office and that McNeeley disclosed Milligan's theft of the money. Brindza testified he noted in his report McNeeley's reluctance to implicate Milligan because of "pressure." Finally, Sergeant Brindza explained that if a complainant does not appear in five days, the allegations are considered withdrawn.

The defense presented five character witnesses, including fellow police officers, who attested to McNeeley's

reputation for honesty. One of these police witnesses also testified the duty reports did not always accurately reflect police activities at a particular time.

Linda McNeeley, the defendant's wife, told the court her husband received a series of phone calls from officer Milligan during the week of August 18, 1986. She also described her husband as very nervous and tense at that time.

McNeeley, who took the stand, testified that Willingham was detained on a routine traffic stop near East 71st Street and Carnegie. He told the court he searched Willingham's car while Milligan patted down Willingham at the police cruiser. McNeeley denied observing his partner take money from Willingham's wallet. McNeeley told the court he threatened Willingham with jail because he was angry when Willingham returned and accused them of stealing his money. McNeeley averred he first learned of the theft when Milligan threw the money on his lap after Willingham drove away. McNeeley claimed he told his partner, "you really * * * up. I don't want no part of this."

McNeeley testified that he and Milligan stopped at the Fifth District Police Station at approximately 5:00 a.m. McNeeley stated he remained in the car filling out his duty report while Milligan went into the station for a cup of coffee. According to McNeeley, Milligan returned to the car and told him Willingham was in the station house. McNeeley testified that he told Hoke he did not take the money and Hoke permitted him to see the complaint.

McNeeley told the court Milligan constantly called him during the days after the theft. According to McNeeley, his partner asked that he not disclose Milligan's actions and threatened to kill himself if he were

sent to prison. McNeeley testified that on August 26, 1986, he told Brindza that Milligan stole Willingham's money.

In his first and second assignments of error McNeeley challenges the manifest weight of the evidence.

R.C. 2921.12 prohibits "tampering with evidence" and provides in pertinent part:

"(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

"* * *

"(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation."

"Tampering with records" is proscribed by R.C. 2913.42, which states in relevant part:

"(A) No person, knowing he has no privilege to do so, and with purpose to defraud or knowing that he is facilitating a fraud, shall do any of the following:

"(1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, data, or record * * *."

R.C. 2913.01(B) defines "defraud" as "* * * to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another."

Clearly, McNeeley filed a duty report knowing it to be inaccurate. It was undisputed the report misrepresented the officers' activities after the Willingham incident. The report contained no reference to Milligan's illegal activities or to the time the officers spent at the Fifth District station after the robbery. The state introduced

evidence that duty reports are used during investigations of alleged police misconduct and that such allegations are considered withdrawn if a complainant does not appear within five days after filing the complaint. The trial court reasonably could conclude McNeeley filed the inaccurate report to give the appearance of normalcy during the August 17-18, 1986 patrol shift so as to hinder police investigation into Willingham's complaint, thereby protecting his and Milligan's jobs.

We reject McNeeley's argument that the state failed to prove the report misled investigators. The inaccurate report certainly did not aid the investigation. More important, the statutes only require proof of a "purpose" to mislead or defraud. As we previously noted, the state introduced evidence on this element. We also reject the defendant's argument that his "mere" omissions are insufficient and that the statute requires an affirmative act. We do not find the failure to reflect the morning's events accurately a "mere" omission. Furthermore, omissions can serve as a basis for criminal liability if a person has a duty to act. See R.C. 2901.21(A). McNeeley was under an obligation to file an accurate report.

Evaluating witness credibility is primarily within the purview of the trier of fact. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212. In light of the substantial evidence of the defendant's guilt, we will not reverse the trial court's judgment.

Accordingly, the defendant's first and second assignments are overruled.

In his third assignment of error, McNeeley asserts "tampering with evidence" and "tampering with records" are crimes of similar import.

This court has adopted a two-part test for determining when two crimes are allied offenses. *State* v. *Moralevitz* (1980), 70 Ohio App. 2d 20, 24 O.O. 3d 16, 433 N.E. 2d 1280. First, the elements of each offense must overlap to such a degree that the commission of one offense will result in the commission of the other. Second, the crimes must not have been committed separately or with separate animuses. See, also, *State* v. *Logan* (1979), 60 Ohio St. 2d 126, 14 O.O. 3d 373, 397 N.E. 2d 1345.

The elements of each offense are set forth in our disposition of the first and second alleged errors. A comparison of these elements convinces us that the commission of "tampering with evidence" under R.C. 2921.12 (A)(2) automatically results in the commission of "tampering with records" under R.C. 2913.42(A)(1). We further find that the two crimes were committed with the same animus in this case. The same criminal activity, McNeeley's filing of the false duty report, supports each conviction.

Accordingly, this assignment of error is well-taken.

*Judgment affirmed in part,*
*reversed in part*
*and remanded for resentencing.*

NAHRA, C.J., concurs.

MARKUS, J., dissents in part.

MARKUS, J., dissenting in part. If there were sufficient evidence to support the defendant's convictions for "tampering with evidence" (R.C. 2921.12) and "tampering with records" (R.C. 2913.42), the two convictions should merge for sentencing purposes. However, in my opinion the evidence does not support either of those convictions. It may well show that the defendant obstructed justice in violation of R.C. 2921.32(A)(5), or failed to report a felony in violation of R.C. 2921.22(A). It does not show that

he committed the offenses for which he was indicted here.

The state sought to prove that the defendant tampered with evidence by showing that he knowingly falsified his duty report, with the purpose to mislead some unidentified public official who might investigate Willingham's complaint, or to corrupt the outcome of that investigation. The state sought to prove that he tampered with records by showing that he falsified his duty report, with the purpose to defraud the potential investigators or knowing that he was facilitating a fraud upon them.

No other form of these offenses has any possible application to the facts in this case. More specifically, the state could not establish either of these charges by evidence that the defendant deceived or attempted to deceive anyone with oral statements or omissions.

Viewing the evidence most favorably for the state, the trial court could have found that the defendant falsified his duty report by (1) misstating by one block the place where he and his partner stopped Willingham, (2) misstating the times or sequence of events in which he and his partner were involved that evening, (3) omitting any reference to his knowledge about his partner's robbery of Willingham, (4) omitting any reference to his own presence at the police station when Willingham reported that robbery, and (5) omitting any reference to his discussion that evening with his lieutenant about that report.

The court acquitted the defendant on the charge that he participated in the robbery. However, the state argues that some or all of the inaccuracies in the defendant's duty report reflect his purpose to protect himself or his partner from prosecution or discipline. I do not perceive how a reasonable factfinder could draw that inference more readily than inferences that (a) neglect or tension caused by that evening's events caused him to prepare a sloppy report, or (b) his desire to avoid any further involvement in the robbery controversy restrained him from providing any further details.

The defendant did not commit the alleged offenses until he completed and delivered his duty report. At that time he knew that other officers had Willingham's written complaint about the robbery. It is unreasonable to prefer an inference that he sought to conceal the robbery, which was then the subject of a public record, over inferences that he was careless in preparing the report, or at most that he sought to conceal his own knowledge about the robbery.

Therefore, the equivocal circumstantial evidence about the defendant's purpose cannot alone justify these convictions. Cf. *State* v. *Jacobozzi* (1983), 6 Ohio St. 3d 59, 61, 6 OBR 103, 105, 451 N.E. 2d 744, 747; *State* v. *Sorgee* (1978), 54 Ohio St. 2d 464, 465, 8 O.O. 3d 452, 453, 377 N.E. 2d 782, 783; *State* v. *Kulig* (1974), 37 Ohio St. 2d 159, 160, 66 O.O. 2d 351, 352, 309 N.E. 2d 897, 899.

Moreover, the charges here do not depend upon the defendant's occupation, or his preparation of a document in the course of public duties. Thus, these convictions on this evidence portend similar convictions of any person who deliberately fails to disclose in a *public or private record* that person's knowledge about *any* event, with knowledge that it may be reviewed in the course of a public investigation. The same result obtains whether the investigation concerns a crime or merely the investigator's perception of the public welfare.

The unwilling informant may have a moral duty, or even a legal duty, to assist public investigations. However,

that person's refusal to disclose the extent of his or her knowledge in some public or private record does not constitute tampering with records or tampering with evidence. I would reverse the defendant's convictions and discharge him.