[Cite as *State v. Sherman*, 2015-Ohio-3299.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo            Court of Appeals No. L-14-1060

       Appellee                     Trial Court No. CRB-13-19881

v.

Jodi Sherman                      **DECISION AND JUDGMENT**

       Appellant                   Decided:  August 14, 2015

* * * * *

David Toska, City of Toledo Chief Prosecutor, and
Henry Schaefer, Assistant Prosecutor, for appellee.

M. Sean McNulty, Chief Public Defender, and Kelli S.
Jelinger, Assistant Public Defender, for appellant.

* * * * *

**JENSEN, J.**

{¶ 1} Following a bench trial, defendant-appellant, Jodi Sherman, appeals the

February 28, 2014 judgment of the Toledo Municipal Court sentencing her with respect

to her conviction of cruelty to a companion animal. For the following reasons, we reverse the trial court's judgment.

## I. Background

{¶ 2} The facts of this case were elicited at trial through the testimony of Joanne Wilson, an employee of Oregon Animal Hospital; Dr. Alan Kao, a veterinarian at Oregon Animal Hospital; Nancy Schilb, an animal cruelty investigator with the Toledo Area Humane Society; and Irvin Clark, an acquaintance of Sherman. Their testimony established that in late October of 2013, possibly around October 27, 2013, Jodi Sherman discovered that a stray cat that often roamed her neighborhood was hiding in a crawl space under a house. The cat was injured. Sherman took the cat in, cleaned its wounds with hydrogen peroxide, and bandaged and dressed the wounds. It is not alleged that Sherman caused the cat's injuries.

{¶ 3} On October 30, 2013, Sherman contacted her veterinarian's office to make an appointment for the cat. Wilson took Sherman's call and Sherman described to Wilson that the cat's leg "was hanging weird" and was possibly broken. Wilson advised Sherman that she should have the cat treated right away, but told her that she could not bring the cat to Oregon Animal Hospital unless she was able to make a payment toward a balance she owed on her account. Sherman was unable to make payment that day, so Wilson advised her that it was cruel to delay in seeking treatment and that she should call the humane society. Sherman did not want to do this because she feared that the cat would be killed.

2.

{¶ 4} On November 1, 2013—incidentally, the day Sherman received her monthly social security payment—Sherman brought the animal to Oregon Animal Hospital wrapped in a blanket. Dr. Kao treated the cat and found that the cat had suffered an open fracture of its left rear leg. The bone was dry, indicating that the fracture was several days old, and the bone repeatedly punctured the cat's skin. Its left elbow was severely displaced and it had a pus-filled lesion on its arm. The cat was given pain medications and antibiotics. The severity of its leg fracture required amputation and Dr. Kao had great difficulty in replacing its elbow.

{¶ 5} The veterinarian's office contacted the humane society and Schilb investigated the incident. Sherman was charged with violating R.C. 959.131(B). The case proceeded to a bench trial on February 20, 2014. The court found Sherman guilty. Although the court sympathized with Sherman and recognized that her intentions were good, it explained:

> I think the testimony is clear that this was a stray, and I believe that it was a stray. Okay. And I believe you acted out of the goodness of your heart when you attempted to care for this animal. However, under the code, when you begin to harbor an animal by giving it food and shelter, it becomes—you become an owner or harborer and you are subject to all the rules and regulations with respect to animal ownership at that point.
>
> So I do find, at the point you began to care for this animal, you did begin to harbor it, which puts you on the hook for its care. * * *

3.

I do believe that the State has met its burden at the point where you did not seek attention on October 3rd [sic] for this animal * * *.

{¶ 6} The court referred the matter for a presentence investigation report. On February 28, 2014, the court sentenced Sherman to 180 days at CCNO and a $1,000 fine, both of which were suspended. She was placed on probation for five years, was ordered to pay $788 in restitution to Dr. Kao, and was prohibited from possessing, owning, or harboring any animal for the term of her probation. It is from this order that Sherman appeals. She assigns the following errors for our review:

First Assignment of Error

The State failed to prove that the Defendant violated the law of prohibitions against Companion Animal Torture and the Court as proscribed in Ohio Revised Code Section 959.131(B) and therefore erred in convicting the defendant [sic].

Second Assignment of Error

Counsel failed to object to Hearsay testimony that was used as the basis for charging the defendant with the purpose to prove their case: two part test of hearsay: [sic][.]

Third Assignment of Error

The Court erred in ordering that there be no animals in the appellant's home as a condition of probation.

Fourth Assignment of Error

The Court erred in ordering the Defendant to pay restitution to the Oregon Animal Hospital.

## II. Law and Analysis

{¶ 7} In her first assignment of error, Sherman argues that although she was charged under R.C. 959.131(B), in finding Sherman guilty, the court cited the language of section (C)(2) of the statute. She also urges that R.C. 959.131(B) criminalizes the *commission* of an act, but not an *omission* to act. Because it is not alleged that Sherman caused the cat's injuries—only that she failed to seek immediate treatment for the cat— she cannot be convicted of the crime with which she was charged.

{¶ 8} In essence, Sherman argues that the evidence was insufficient to support her conviction under R.C. 959.131(B). Sufficiency of the evidence is a question of law. *State v. Rodich,* 6th Dist. Sandusky No. S-13-043, 2014-Ohio-4399, ¶ 8. It is a determination of the adequacy of the evidence which requires us to review "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal quotations and citations omitted.) *Id.*

{¶ 9} The statute under which Sherman was charged, R.C. 959.131(B), provides that "No person shall knowingly torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal." Provision (A) of the statute refers to R.C. 1717.01 for the definition of "cruelty,"

5.

"torment," and "torture." R.C. 1717.01(B) defines "cruelty," "torment," and "torture" as follows:

> "Cruelty," "torment," and "torture" include every act, *omission*, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief. (Emphasis added.)

{¶ 10} The city argues that although Sherman could have been charged and convicted under provision (C)(2), incorporation of the R.C. 1717.01(B) definition of "cruelty," "torment," and "torture" into the statute means that R.C. 959.131(B) can be violated by a mere omission. We reject the city's argument.

{¶ 11} It is generally recognized that before one can be criminally liable for an omission, he or she must owe a duty to act. *State v. McNeeley*, 48 Ohio App.3d 73, 77, 548 N.E.2d 961 (8th Dist.1988), citing R.C. 2901.21(A). R.C. 959.131(B) does not specifically criminalize omissions to act and it applies to *all* persons. It does not define when one owes a duty to act so as to render him or her liable for an omission.

{¶ 12} R.C. 959.131(C), on the other hand, specifically prohibits omissions of care by *custodians or caretakers* of companion animals. It provides:

> No person who confines or who is the custodian or caretaker of a companion animal shall negligently do any of the following:

6.

(1) Commit any act by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal;

(2) Omit any act of care by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal;

(3) Commit any act of neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal;

(4) Needlessly kill the companion animal;

(5) Deprive the companion animal of necessary sustenance, confine the companion animal without supplying it during the confinement with sufficient quantities of good, wholesome food and water, or impound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight, if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation, confinement, or impoundment or confinement in any of those specified manners.

{¶ 13} Until it was amended effective September 13, 2013, R.C. 959.131(C)(1) simply provided that "No person who confines or who is the custodian or caretaker of a

companion animal shall negligently * * * torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against the companion animal"—language similar to (B). It now specifically prohibits omissions, as well as commissions of neglect. We believe that if an omission could already serve as a basis for liability under the definition of R.C. 1717.01(B), it would have been unnecessary for the legislature to specify in (C) that omissions of care are prohibited.

{¶ 14} In *State v. Fry*, 2d Dist. Clark No. 2006-CA-14, 2006-Ohio-4157, the Second District interpreted R.C. 959.131(C)(1) as it previously existed and held that despite the incorporation of R.C. 1717.01(B) into the statute, construing R.C. 959.131(C)(1) strictly against the state, only *acts* of cruelty were punishable—not omissions to act. Following the 2013 amendments, (C)(2) now explicitly encompasses omissions. Our view is that if the legislature had intended for the same to be true with respect to (B), it could have amended the language in that provision to mirror the language in (C). Because it did not, we are left to conclude that the legislature did not intend for (B) to criminalize omissions of care.

{¶ 15} In sum, because the legislature did not define when one owes a duty to act and did not specify that R.C. 959.131(B) prohibits omissions of care—as it recently did in (C)(2)—Sherman was improperly charged and convicted under (B) for failing to seek immediate care for the cat. We, therefore, find Sherman's first assignment of error well-taken. Because of our disposition as to Sherman's first assignment of error, we need not address her remaining assignments of error.

8.

## III. Conclusion

{¶ 16} We find Sherman's first assignment of error well-taken and reverse and vacate the judgment of conviction and the February 28, 2014 sentencing judgment of the Toledo Municipal Court. Pursuant to App.R. 24, the city is ordered to pay the costs of this appeal.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.          _____
                                                          JUDGE
James D. Jensen, J.
CONCUR.                       _____
                                                          JUDGE
Stephen A. Yarbrough, P.J.,
DISSENTS.

**YARBROUGH, P.J.**

{¶ 17} I would agree with the city's argument and uphold appellant's conviction under R.C. 959.131(B). R.C. 959.131(B) specifically incorporates the definitions of cruelty, torment, and torture into its prohibitions. R.C. 959.131(A)(2) ("'Cruelty,' 'torment,' and 'torture' have the same meanings as in section 1717.01 of the Revised Code."). Those definitions clearly state a failure to act, when a reasonable alternative is

available, constitutes cruelty, torment, and torture. R.C. 1717.01(B) ("'Cruelty,' 'torment,' and 'torture' include every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is reasonable remedy or relief"). This cannot be overlooked by this court when there is little ambiguity in the language enacted by the legislature.

{¶ 18} The majority is correct in that one must have a duty to act before they can be punished for an omission. *State v. McNeeley*, 48 Ohio App.3d 73, 77, 548 N.E.2d 961 (8th Dist.1988). Appellant took on such a duty when she opened her home to the stray cat. She began to care for the animal and by doing so took on the duty of ensuring the animal was not neglected. Appellant felt the weight of this duty when she was prepared to pay the necessary veterinarian bills out of her own pocket. The animal was not a random animal found on the side of the road, but rather a stray that was taken in and cared for by appellant. If appellant had merely left the animal where it laid injured, she would not have taken on the duty to take care of the animal to such a reasonable extent.

{¶ 19} The majority finds R.C. 959.131(B) fails to preclude omissions, despite its incorporation of the definitions of cruelty, torment, and torture, because the section applies to "all persons." R.C. 959.131(B). This is in stark contrast to R.C. 959.131(C) which specifically applies to "custodians or caretakers." R.C. 959.131(C). Though R.C. 959.131(C) gives more guidance on who can be charged with animal cruelty under the section, appellant's actions were still covered under R.C. 959.131(B). She still failed to take the animal to the vet or call the Humane Society which caused the cat to suffer for a

10.

longer period of time. There is no reason to differentiate between the two sections just because one of the sections is more specific than the other or the two sections cover the same actions.

{¶ 20} If one must look outside the section at issue here and look to the relatively recent acts by the legislature as the majority does, one comes to the same conclusion. The majority relies heavily on the fact R.C. 959.131(C) was revised in 2013 to specifically include omissions in certain situations. The legislature, at the same time, decided to keep R.C. 959.131(B) the same without making any changes. Thus, they had an opportunity to change R.C. 959.131(B) to specifically exclude omissions or to change the incorporation of the definitions of cruelty, torment, and torture, but failed to do so. The majority interprets this decision to mean the legislature did not intend for R.C. 959.131(B) to include omissions. Another interpretation of this decision could mean the legislature wanted to change the language of R.C. 959.131(C) to be more specific. This decision has no effect on R.C. 959.131(B) or its inclusion of omissions.

{¶ 21} In sum, appellant undertook a duty of care towards an animal and then allowed the animal to continue to suffer with major injuries before seeking help. By a simple phone call and at no expense to appellant, she could have stopped the suffering of the animal. I would affirm the conviction.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.