[Cite as *State v. Goodwin*, 2017-Ohio-2712.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-05-099 |
| | : | O P I N I O N |
| - vs - | | 5/8/2017 |
| | : | |
| JACOB GOODWIN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 16 CRB 00595

Neal D. Schuett, Assistant Prosecuting Attorney, 345 High Street, 2nd Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 315 South Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Jacob Goodwin, appeals from his conviction and sentence in the Hamilton Municipal Court for cruelty to animals.

{¶ 2} Following an investigation into a dead dog found inside a cage in a dumpster at an apartment complex in Hamilton, Butler County, Ohio, Goodwin was charged by complaint with one count of cruelty to animals in violation of R.C. 959.131(B), a misdemeanor of the

first degree. Goodwin entered a not guilty plea to the charge and a bench trial commenced on May 11, 2016.

{¶ 3} At trial, the state presented testimony from Deputy Kurt Merbs, a supervisor dog warden for the Butler County Sheriff's Office. Merbs testified that on February 5, 2016, he was dispatched to an apartment complex in Hamilton, Ohio after a dead dog was found in a dumpster. Merbs found an erect cage with a sheet covering it sitting inside a dumpster. Inside the cage, on top of a wet and moldy blanket, was a dead black and brown, mixed breed dog. Inside the cage with the dog was some moldy dog food. The dog was very thin and had open wounds on its hind end and hip area. After removing the dog and cage from the dumpster, Merbs found a tag with Sarah Schmuck's phone number on the dog's collar.

{¶ 4} Merbs called Schmuck, who informed him that she had given the dog away to some unidentified people she met at a Speedway. A few days later, Merbs followed up his phone call with Schmuck by visiting her at her apartment, which was located near the apartment complex where the dead dog was found. At this time, Schmuck repeated her story about having given the dog away.

{¶ 5} On February 10, 2016, Schmuck reported to the dog warden's office with Goodwin. Both Schmuck and Goodwin gave a statement to Merbs. Schmuck informed Merbs she went to stay with her mother for a week while Goodwin looked after her dog. During this time, the dog died. She also informed Merbs that the dog had stopped eating about two weeks prior to that, but she had not taken the dog to a veterinarian.

{¶ 6} Goodwin told Merbs that while Schmuck was visiting her mother, he went to Schmuck's apartment "maybe two or three times" in a "week's time" to care for the dog. When Merbs asked Goodwin what caring for the dog entailed, Goodwin stated he would "just open the cage, the dog would go into the bathroom of the apartment and use the restroom on the floor, and then he would put it back in the cage and throw it some dog food and head

- 2 -

back out."[1]  On one of the occasions when he stopped by Schmuck's apartment, Goodwin found the dog dead.  Goodwin told Merbs he took the cage containing the dog, walked it to a nearby dumpster, and "pitched it in the dumpster" before covering it with a sheet.  After admitting his involvement in the incident, Goodwin asked Merbs whether the offense he committed was a first-degree or second-degree misdemeanor, if he would have to cut his hair while in jail, and whether his conviction would "screw up him getting a CCW permit."

{¶ 7}  On cross-examination, Merbs admitted he did not know how long the dog had been in the dumpster before it was discovered.  He also admitted that the first time Schmuck had mentioned Goodwin's name in connection with the dog was on February 10, 2016, five days after the dog had been discovered.

{¶ 8}  Following Merbs' testimony, the state rested its case-in-chief.  The trial court accepted into evidence photographs Merbs had taken of the dog when it was first removed from the dumpster.  Goodwin then moved for acquittal pursuant to Crim.R. 29, but his motion was denied by the trial court.  Thereafter, Goodwin and Schmuck testified on behalf of Goodwin's defense.

{¶ 9}  Schmuck testified the dog found in the dumpster was her dog, Charlie, and that she had been the dog's owner for about two years.[2]  Schmuck stated she was the one who put the dog in the dumpster.  She explained the dog "got sick and died and I came home from work one day and found him and it was late at night so I kind of freaked out and didn't really know what to do so I took him to the dumpster."  According to Schmuck, the dog had been ill around the time of his death.  She stated that "about a month before he passed he

---

1. Merbs could not recall whether Goodwin had stated if he gave water to the dog during the week he cared for it.

2. The age of the dog at the time of its death is unknown.  Schmuck only testified about the length of her ownership of the dog, not its age.

- 3 -

was sick and he would throw the food back up so I reduced his food some and kept feeding him and he started to eat some but then he just passed away and I don't know why."

{¶ 10} Schmuck acknowledged that she had not been truthful when talking to Deputy Merbs. When she originally told him she gave the dog away to someone at Speedway, she did so because she was "freaking out" and "didn't know what to say." At the time of the dog's death, she had been staying at her mother's home, which was about 30 minutes away from her apartment. However, she was stopping back at her apartment "regularly" as she was "still going back and forth between the apartment for work." On the day the dog died, Schmuck came home from work and found him "laying there motionless." She stated she "got the cage and * * an old sheet and put it over the cage, put it in my car and drove to a different apartment and put him in the dumpster."

{¶ 11} According to Schmuck, Goodwin had nothing to do with the dog's death or the dog's placement in the dumpster. She had not asked Goodwin to care for the dog and he only knew of the dog's death and placement in the dumpster because she told him about it. Schmuck testified she was being truthful in court and was testifying on Goodwin's behalf "[b]ecause I don't believe that it's right that somebody else gets in trouble for something that I did."

{¶ 12} Goodwin testified his February 10, 2016 statement to Merbs was false, as he had not been asked to care for the dog and he had not put the dog in the dumpster. He first learned about the dog dying and being placed in the dumpster when Schmuck, his former girlfriend, contacted him to tell him about Merbs' investigation. As he was concerned that Schmuck might face jail time for her actions, and he "felt bad for her" and "didn't want her to go through [it] alone," Goodwin accompanied Schmuck to the dog warden's office and claimed responsibility. He testified, "It was just kind of not really a spur of the moment thing but like I had it in the back of my head that I was going to do it but when I seen her crying and

- 4 -

stuff I was like, 'I did it.'"

{¶ 13} After considering the foregoing testimony and evidence, the trial court found Goodwin guilty as charged. In finding Goodwin guilty, the court discounted Schmuck's testimony, stating:

> I can't think of any person that I've ever really seen testify that has as little credibility as Ms. Schmuck had here today. * * * [W]hen a person basically comes in and says that "I'm lying all the time. I'm lying all the time, but now I'm telling the truth," well, she has no credibility at all. Her testimony was worth nothing except that it does make me think that the only reason she was here to testify today was to try to help Mr. Goodwin get out of trouble for his acts with regard to this dog.

{¶ 14} The court sentenced Goodwin to 180 days in jail, with 60 days stayed, and to a two-year term of community control. The court also imposed a $400 fine and ordered Goodwin to pay costs.

{¶ 15} Goodwin appealed, raising three assignments of error. Prior to addressing the merits of his assigned errors, this court will first consider Goodwin's December 27, 2016 motion to strike documents attached to the state's appellate brief.

**Motion to Strike**

{¶ 16} The state filed its appellate brief on December 12, 2016, and attached to its brief four documents: (1) a screen capture of Goodwin's supervision fees, (2) a screen capture of Goodwin's indigent fees, (3) Goodwin's General Conditions of Supervised Community Control, and (4) a Court Order regarding the total fines Goodwin was ordered to pay. Goodwin argues these documents are not part of the record on appeal and should therefore be stricken.

{¶ 17} App.R. 9(A)(1) provides that "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the

record on appeal in all cases." This court "is confined to the record, and cannot consider evidence offered for the first time on appeal." *State v. Garr*, 12th Dist. Butler No. CA2009-01-014, 2009-Ohio-6241, ¶ 23.

{¶ 18} The "General Conditions of Supervised Community Control" and "Court Order" documents attached to the state's brief are properly before this court as the documents were filed in the trial court. These documents were docketed on May 13, 2016, and May 23, 2016, respectively. The other two documents, the "screen capture" documents, were not filed in the trial court or introduced as exhibits. As such, these documents are not properly before us and will not be considered in the present appeal.

{¶ 19} Goodwin's motion to strike is granted in part, and the two "screen capture" documents are hereby stricken. In all other respects, Goodwin's motion to strike is denied.

**Appeal**

{¶ 20} Assignment of Error No. 1:

{¶ 21} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR VIOLATING R.C. 959.131(B), AND THE VERDICT ON THIS COUNT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 22} In his first assignment of error, Goodwin argues his conviction for cruelty to animals is not supported by sufficient evidence and is against the manifest weight of the evidence.

{¶ 23} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No.

CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶ 24}** A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.

**{¶ 25}** Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. *See also State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43 ("a

finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency").

{¶ 26} Goodwin was convicted of cruelty to animals in violation of R.C. 959.131(B), which provides that "[n]o person shall knowingly torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal." The statute provides that the terms "cruelty," "torment" and "torture" have the same meanings as in R.C. 1717.01. R.C. 959.131(A)(2). Pursuant to R.C. 1717.01(B), "'[c]ruelty,' 'torment,' and 'torture' *include every act, omission, or neglect* by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief." (Emphasis added.) "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 27} Goodwin argues that he could not be convicted of violating R.C. 959.131(B) as the statute only criminalizes the *commission* of an act, and not an *omission* to act, such as the failure to properly care for the dog. In support of his argument, Goodwin relies on *State v. Sherman*, 6th Dist. Lucas No. L-14-1060, 2015-Ohio-3299.

{¶ 28} In *Sherman*, the defendant found an injured stray cat hiding in a crawl space under a house in her neighborhood. *Id.* at ¶ 2. Sherman took the cat in, cleaned and dressed its wounds, and contacted a veterinarian about the cat's leg because it was "hanging weird." *Id.* at ¶ 2-3. As Sherman could not financially afford to get the cat immediate attention, she waited a few days before taking it to the veterinarian. *Id.* at ¶ 3-4. The veterinarian found that the cat had an open fracture on its left rear leg, its left elbow was severely displaced, and it had a pus-filled lesion on its arm. *Id.* at ¶ 4. The veterinarian contacted the humane society, and following an investigation, Sherman was charged with

violating R.C. 959.131(B). *Id.* at ¶ 5. She was convicted of this offense following a bench trial. *Id.*

**{¶ 29}** Sherman appealed to the Sixth District Court of Appeals, arguing that R.C. 959.131(B) "criminalizes the *commission* of an act, but not an *omission* to act." (Emphasis sic.) *Id.* at ¶ 7. Because it was not alleged that she caused the cat's injuries – only that she failed to seek immediate treatment for the cat – she contended she could not be convicted of the crime charged. *Id.* The Sixth District majority agreed with Sherman, holding that "because the legislature did not define when one owes a duty to act and did not specify that R.C. 959.131(B) prohibits omissions of care – as it * * * did in [former subdivision] (C)(2) [of the statute] – Sherman was improperly charged and convicted under (B) for failing to seek immediate care for the cat." *Id.* at ¶ 15.

**{¶ 30}** In reaching this conclusion, the Sixth District noted that

> [i]t is generally recognized that before one can be criminally liable for an omission, he or she must owe a duty to act. *State v. McNeeley*, 48 Ohio App.3d 73, 77, 548 N.E.2d 961 (8th Dist.1988), citing R.C. 2901.21(A). R.C. 959.131(B) does not specifically criminalize omissions to act and it applies to all persons. It does not define when one owes a duty to act so as to render him or her liable for an omission.

*Id.* at ¶ 11. The court compared the language of division (B) of the statute to division (C) of the statute, and noted that subdivision (C)(2) explicitly prohibited omissions of care by custodians or caretakers. *Id.* at 12.[3] Specifically, former R.C. 959.131(C)(2) provided that

---

3. **{¶ a}** Former R.C. 939.131(C) provided that "[n]o person who confines or who is the custodian or caretaker of a companion animal shall negligently do any of the following:

> **{¶ b}** (1) Commit any act by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal;

> **{¶ c}** (2) Omit any act of care by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal;

> **{¶ d}** (3) Commit any act of neglect by which unnecessary or unjustifiable pain

"[n]o person who confines or who is the custo0dian or caretaker of a companion animal shall negligently * * * [o]mit any act of care by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal."  Noting that subdivision (C)(2) of the statute, unlike division (B), specifically prohibited omissions, as well as commissions of neglect, the Sixth District stated, "[w]e believe that if an omission could already serve as a basis for liability under the

---

or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal;

{¶ e}    (4) Needlessly kill the companion animal;

{¶ f}    (5) Deprive the companion animal of necessary sustenance, confine the companion animal without supplying it during the confinement with sufficient quantities of good, wholesome food and water, or impound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight, if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation, confinement, or impoundment or confinement in any of those specified manners.

{¶ g} However, pursuant to an amendment to the statute, which took effect on September 13, 2016, R.C. 959.131 now provides, in relevant part, as follows.

{¶ h}    (C) No person shall knowingly cause serious physical harm to a companion animal.

{¶ i}    (D) No person who confines or who is the custodian or caretaker of a companion animal shall negligently do any of the following:

{¶ j}    (1) Torture, torment, or commit an act of cruelty against the companion animal;

{¶ k}    (2) Deprive the companion animal of necessary sustenance or confine the companion animal without supplying it during the confinement with sufficient quantities of good, wholesome food and water if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation or confinement;

{¶ l}    (3) Impound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the lack of adequate shelter.

definition of R.C. 1717.01(B), it would have been unnecessary for the legislature to specify in (C) that omissions of care are prohibited." *Id.* at ¶ 13. The court believed that "if the legislature had intended for [omissions to act to be punishable] * * * it could have amended the language in * * * provision [(B)] to mirror the language in (C). Because it did not, we are left to conclude that the legislature did not intend for (B) to criminalize omissions of care." *Id.* at ¶ 14.

{¶ 31} We disagree with the holding of *Sherman*. The definitions of "cruelty," "torment," and "torture" are specifically incorporated into R.C. 959.131(B) pursuant to R.C. 959.131 (A)(2). Those definitions clearly state that a failure to act that causes an unnecessary or unjustifiable pain or suffering or allows such pain or suffering to continue when there is a reasonable alternative available constitutes cruelty, torment, and torture. *See* R.C. 1717.01(B) ("'[c]ruelty,' 'torment,' and 'torture' include every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief"). As the legislature included a definition in the statute that specifically incorporated omissions to act, we find that Goodwin could be convicted pursuant to R.C. 959.131(B) for his omissions in caring for the dog.

{¶ 32} Furthermore, with respect to whether Goodwin had a duty to act and could be punished for an omission, R.C. 2901.21(A) provides that "a person is not guilty of an offense unless both of the following apply: (1) [t]he person's liability is based on conduct that includes either a voluntary act, *or an omission to perform an act or duty that the person is capable of performing*; [and] (2) [t]he person has the requisite degree of culpability * * *." (Emphasis added.) The record indicates Goodwin undertook a duty to care for the dog, that he was capable of performing this duty, and that his failure to properly care for the dog amounted to cruelty, torment and torture of the animal.

{¶ 33}   Therefore, after reviewing the record, weighing inferences and examining the credibility of the witness, we find that Goodwin's conviction for cruelty to animals is supported by sufficient evidence and is not against the weight of the evidence.  The state presented testimony and evidence from which the trial court could have found all the essential elements of the offense proven beyond a reasonable doubt.  The state introduced evidence that Goodwin agreed to care for Schmuck's dog for a week, and that during this time, his failure to provide proper care to the dog caused the dog to experience unnecessary pain and suffering when there was a reasonable remedy or relief available.  Over the course of a week, Goodwin almost exclusively kept the dog caged.  He only allowed the dog outside the cage two or three times to relieve itself.  Even then, the dog was only taken to the apartment's bathroom.  After the dog relieved itself on the apartment's bathroom floor, Goodwin put the dog back in the cage, "thr[e]w it some dog food and head[ed] back out." Though the dog was very thin and had open wounds on its hind end and hip, Goodwin did not seek treatment for the dog.  Given these facts, the trier of fact was entitled to find that Goodwin's failure to properly care for the dog was an act of cruelty that caused unnecessary pain and suffering to the dog.

{¶ 34}   In finding Goodwin guilty of cruelty to animals, the trial court was entitled to discredit Schmuck's and Goodwin's testimony and believe Deputy Merbs' testimony.  "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Rhines*, 2d Dist. Montgomery No. 23486, 2010-Ohio-3117, ¶ 39.  "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶ 35}   Moreover, we conclude that the trial court was entitled to find Goodwin guilty

of cruelty to animals even absent expert testimony from a veterinarian. Contrary to Goodwin's arguments, the state was not required to present evidence about the cause of the dog's death. R.C. 959.131(B) merely required the state to prove Goodwin knowingly tortured, tormented, or committed an act of cruelty against the dog. The state met this burden.

{¶ 36} Accordingly, we find that Goodwin's conviction for cruelty to animals is not against the manifest weight of the evidence and is supported by sufficient evidence. Goodwin's first assignment of error is overruled.

{¶ 37} Assignment of Error No. 2:

{¶ 38} APPELLANT'S SENTENCE WAS CONTRARY TO LAW.

{¶ 39} In his second assignment of error, Goodwin argues the trial court erred when it included in his sentencing entry a financial sanction a "fee" in the amount of $985, when such sanction was not discussed at the sentencing hearing.

{¶ 40} Goodwin's Judgment Entry of Conviction lists the following costs and financial sanctions: (a) State Court Costs, $62; (b) Local Court Costs, $29; (c) Fines, $400, and (d) Fees, $985. Although Goodwin argues he was not notified of the $985 fee, the record demonstrates otherwise. At sentencing, the court advised Goodwin he was being placed on community control and then imposed financial sanctions, stating: "The fine is $400 [and] cost[s]. And you'll be reporting. We'll let the probation department collect the fines [sic]. That's it." The General Conditions of Supervised Community Control form that Goodwin executed on the day he was sentenced provided that he "agree[d] to comply with all financial obligations as ordered by the court. Including a 2 year Supervised Community Control fee of not less than $960." Pursuant to R.C. 2951.021(A)(1), the trial court was permitted to require Goodwin to pay a monthly supervision fee of no more than $50 for supervision services. As Goodwin was advised that he was being placed on supervised community control, that he

would have to pay the "fines" (or fees) for such supervision, and the $985 fee falls within the parameters permitted by R.C. 2951.021, we find no error in the trial court's imposition of this financial sanction.[4]

{¶ 41} Goodwin's second assignment of error is, therefore, overruled.

{¶ 42} Assignment of Error No. 3:

{¶ 43} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHERE THE SENTENCING ENTRY INCLUDES INCORRECT INFORMATION AS TO THE OFFENSE OF CONVICTION.

{¶ 44} In his third assignment of error, Goodwin argues the trial court made a clerical error in his sentencing entry which must be corrected to comply with Crim.R. 32(C). We agree.

{¶ 45} Goodwin was charged by complaint with cruelty to animals in violation of R.C. 959.131(B), and the trial court found him guilty as charged. However, the Judgment Entry of Conviction contains a clerical mistake in that it states Goodwin was found guilty of cruelty to animals in "violation of Section 959.13 of the Ohio Revised Code." Pursuant to Crim.R. 36, "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." A trial court may issue a nunc pro tunc entry "to correct clerical mistakes so that the sentencing entry accurately reflects what the court actually decided." *State v. Stewart*, 12th Dist. Butler No. CA2010-08-215, 2011-Ohio-2211, ¶ 15, citing *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, ¶ 13. *See also State v. Chisenhall*, 12th Dist. Clermont Nos.

---

4. Immediately after informing Goodwin he would be on "reporting" or supervised community control, the court stated, "We'll let the probation department collect the fines." Although it would have been preferable for the trial court to have stated it would allow the probation department to collect the "supervisory fees," the court's statements, combined with the General Conditions of Supervised Control form executed by Goodwin on the day of his sentencing, sufficiently establish the trial court's order of supervisory fees in accordance with R.C. 2951.021.

CA2015-07-055 and CA2015-07-063, 2016-Ohio-999, ¶ 42.

**{¶ 46}** Goodwin's third assignment of error is sustained, and the matter is remanded to the trial court for the sole purpose of issuing a nunc pro tunc entry to correct the Judgment Entry of Conviction to reflect the offense for which Goodwin was convicted.

**{¶ 47}** Judgment affirmed in part, reversed in part, and the matter remanded for the limited purpose of issuing a nunc pro tunc sentencing entry.

S. POWELL and RINGLAND, JJ., concur.